# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

HEATHER MULCAHY,

     Plaintiff,

vs.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

No. 20-cv-2086-LTS

**REPORT AND
RECOMMENDATION**

---

Heather Mulcahy ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## I.  BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 17) and only summarize the pertinent facts here. Claimant was born in 1970. (AR[1] at 22.) She has at least a high school education. (*Id*.). Claimant allegedly became disabled due to chronic daily migraines, degenerative disc disease, and gastroparesis. (*Id*. at 112.) Claimant's onset of disability date is January 15, 2017. (*Id*. at 12.) On May 21, 2018, Claimant filed her application for DIB. (*Id*. at 110). Her claim was denied originally on

---

[1] "AR" cites refer to pages in the Administrative Record.

1

September 5, 2018 (*id*. at 110-20) and was denied on reconsideration on November 27, 2018. (*Id*. at 121-34.) A video hearing was held on December 4, 2019, with Claimant and her attorney Hugh M. Field in Waterloo, Iowa and Administrative Law Judge ("ALJ") Michael Lee Larner and Vocational Expert ("VE") Carma Mitchell in West Des Moines, Iowa. (*Id*. at 11, 68-106.) Claimant and the VE both testified. (*Id*. at 75-105.) The ALJ issued an unfavorable decision on December 23, 2019. (*Id*. at 11-23.)

Claimant requested review and the Appeals Council denied review on August 17, 2020. (*Id*. at 1-4.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On October 16, 2020, Claimant timely filed her Complaint in this Court. (Doc. 1.) On, December 28, 2021, all briefing was completed, and the Honorable Leonard T. Strand, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work,

lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id*. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id*. An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id*. § 404.1520(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

3

supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work

exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.    *The ALJ's Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process.  Initially, the ALJ determined that Claimant meets the insured status requirements through December 31, 2022.  (AR at 13.)  The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from her alleged onset date of January 15, 2017.  (*Id.*)  At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: migraines, mild degenerative disc disease of the cervical and lumbar spine, degenerative joint disease/osteoarthritis of the shoulders (bilaterally and status-post operative procedures).  (*Id.* at 14.)  The ALJ also considered the effects of Claimant's gastroparesis and irritable bowel syndrome but found that these impairments "do not have more than a minimal effect on the [C]laimant's ability to perform basic work activities" and thus, were non-severe.  (*Id.*)  Further, the ALJ considered Claimant's symptoms of fibromyalgia but found that, during the relevant period, the medical evidence did not establish that testing had been performed according to the standards set forth in SSR-12-2p.  (*Id.*)  Additionally, the ALJ considered the effects of Claimant's anxiety and post-traumatic stress disorder ("PTSD") but found that these impairments do "not cause more than minimal limitation in the [C]laimant's ability to perform basic work activities" and thus, were non-severe.  (*Id.*)  At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (*Id.* at 15.)  At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except she has the ability to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she can

never climb ladders, ropes or scaffolds; she can occasionally reach overhead with the bilateral upper extremities; she can frequently handle and finger, bilaterally; and she can work in an environment with a moderate noise intensity level or less.

(*Id.* at 16.)   Also at the fourth step, the ALJ determined that Claimant is capable of performing her past relevant work as an administrative clerk/stockbroker assistant.  (*Id.* at 21.)   Additionally, the ALJ made an alternative step five determination, finding that, based on Claimant's age, education, work experience, and RFC, Claimant "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (*Id.* at 23.)   Based on the VE's testimony, the ALJ found, in the alternative, that Claimant could find other work as a garment sorter, routing clerk, and information clerk.  (*Id.* 22-23.)   Thus, the ALJ concluded that Claimant was not disabled.  (*Id.* at 23.)

## B.    The Substantial Evidence Standard

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole."  *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)).  "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . .  [T]he threshold for such evidentiary sufficiency is not high. . . .  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)).  Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case.  *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted).  "An ALJ's decision is 'not outside the zone

of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## III. DISCUSSION

Claimant alleges that the ALJ committed reversible error by (A) failing to address with specificity whether Claimant's migraine impairment medically equaled listing 11.02 and failing to fully and fairly develop the record with regard Claimant's migraine-related functional limitations; (B) failing to fully and fairly develop the record with regard to Claimant's neck and shoulder-related functional limitations; and (C) failing to provide good reasons for finding Claimant did not credibly report her limitations. (Doc. 18.)

*A.* ***Whether the ALJ Properly Addressed Medical Equivalency with Listing 11.02
and Whether the ALJ Failed to Fully and Fairly Develop the Record with Regard
to Claimant's Migraine-Related Functional Limitations***

    *1.* ***Parties' Arguments***

In general, Claimant argues that, under *Hesseltine v. Colvin*, 800 F.3d 461 (8th
Cir. 2015), "an ALJ must explain why a claim does not medically equal the relevant
listing even when the correct [l]isting is cited." (Doc. 18 at 3.) Specifically with regard
to Claimant's migraine impairment, and, relying on *Mann v. Colvin*, 100 F.Supp.3d 710
(N.D. Iowa 2015) and *Phillip v. Saul*, No. 8:19CV422, 2020 WL 4001162 (D. Neb. July
15, 2020), Claimant argues that "[i]n the context of migraine headaches, ALJs are to
evaluate whether the claimant medically equals Listing 11.02." (*Id.* at 3-4.) Claimant
maintains that, at step three of the sequential process, the ALJ erred by not evaluating
whether her migraine impairment was medically equivalent to listing 11.02. (*Id.* at 4.)
Claimant asserts that the frequency and severity of her migraines "is supportive of
medical equivalence to Listing 11.02." (*Id.*) Claimant also argues that the ALJ failed to
fully and fairly develop the record on this issue because he did not subpoena evidence
from Dr. Hines, a treating source, and because evidence from Dr. Shah, another treating
source, was acquired after the hearing decision. (*Id.* at 7-8.) Claimant concludes that
this matter should be remanded because the ALJ failed to consider "some treating or
examining opinion concerning [Claimant's] functional limitations relating to her
migraines at Step [three] and while crafting [Claimant's] residual functional capacity."
(*Id.* at 8.)

The Commissioner argues that the ALJ properly determined that Claimant's
impairments, including her migraine impairment, did not meet or equal a listing. (Doc.
19 at 6.) Relying on SSR 17-2P, the Commissioner asserts that an ALJ is not required
to include a specific discussion of equivalence in his or her decision. (*Id.*) The

Commissioner also argues that Claimant's reliance on *Mann* is misplaced because, unlike in *Mann*, where there was a lack of evidence regarding the effect of migraines on the claimant's functional abilities, here there is "ample evidence of [Claimant's] migraines for the ALJ to reach an informed decision." (*Id.* at 7.) The Commissioner maintains that the ALJ "fully developed the record as to [Claimant's] migraines, and [Claimant] failed to put forth medical evidence to prove her migraines equaled listing 11.02. (*Id.* at 7-8.) The Commissioner points out that the State agency medical consultants determined that Claimant's migraines, while a severe impairment, did not rise to the listing level of severity or frequency. (*Id.* at 8.) The Commissioner also points out that treatment notes demonstrated that, despite migraines, Claimant consistently had normal neurological findings. (*Id.*) The Commissioner concludes that the ALJ did not err at step three of the sequential evaluation process. (*Id.* at 9.)

      **2.**    ***Relevant Law***

At step three of the sequential evaluation process, an ALJ must determine whether a claimant's impairment or combination of impairments meets or equals one of the listings. 20 C.F.R. § 404.1520(a)(4)(iii). "An impairment meets a listing only if it 'meet[s] all of the specified medical criteria." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (alteration in original). "To prove that an impairment or combination of impairments equals a listing, a claimant 'must present medical findings equal in severity to all the criteria for the one most similar listed impairment.'" *Id.* (quoting *Sullivan*, 493 U.S. at 531); *see also* 20 C.F.R. § 404.1526(a) ("Your impairment(s) is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment."). "The determination is strictly a medical one, *see Cockerham v. Sullivan*, 895 F.2d 492 (8th Cir. 1990), and the claimant bears the burden of showing that her impairment meets or equals the listing, *see Pyland*

*v. Apfel*, 149 F.3d 873 (8th Cir. 1998)." *Baldridge v. Kijakazi*, No. 3:20-cv-00161 PSH, 2021 WL 5912159, at *6 (E.D. Ark. Dec. 14, 2021).

Generally, "[a]n ALJ's failure to adequately explain his factual findings is 'not a sufficient reason for setting aside an administrative finding.'" *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017) (quoting *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008)). Specifically, "[a]n ALJ's failure to address a specific listing or to elaborate on his conclusion that a claimant's impairments do not meet the listings is not reversible error if the record supports the conclusion." *Id.*; *see also Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) ("There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record"); *Pepper ex rel. Gardner, v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) ("Although it is preferable that ALJs address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion.").

SSR 17-2P is also instructive:

> If the adjudicator at the hearing . . . level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step [three].

*Id.*, 2017 WL 3928306, at *4 (Mar. 27, 2017).

The listings do not include an impairment based on migraines. However, SSR 19-4P provides that an ALJ may "find that a primary headache disorder, alone or in

combination with another impairment(s), medically equals a listing." *Id.*, 2019 WL 4169635, at *7 (Aug. 26, 2019). Listing 11.02 (epilepsy) "is the most closely analogous listed impairment for . . . a primary headache disorder." *Id.* "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)," and an ALJ may find that such a headache disorder medically equals the listing. *Id.* Both paragraphs B and D of listing 11.02 require the claimant to experience headaches medically equivalent to "dyscognitive seizures," which are seizures "characterized by alteration of consciousness without convulsions or loss of muscle control." 40 C.F.R. Pt. 404 Subpt. P, App. 1. Specifically, paragraph D requires "[d]yscognitive seizures occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment, as well as a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentration, persistence, or pace; or adapting and managing oneself." *Id.*; *see also* SSR 19-4P, 2019 WL 4169635, at *7 (outlining the same requirements in discussing listing 11.02, paragraph D).[2]

Additionally, the ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008). The ALJ bears this responsibility "independent of the claimant's burden to press [her] case" and it extends to cases where claimants are represented by counsel at the administrative hearing. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). However, the Eighth Circuit has held:

---

[2] I only reference listing 11.02(D) because in Claimant's brief, she only refers to listing 11.02(D) in her argument for medical equivalence. (Doc. 18 at 4.)

> Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment. *Snead,* 360 F.3d at 836; 20 C.F.R. § 404.1512. Past this point, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala,* 22 F.3d 186, 189 (8th Cir. 1994).

*Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). The inquiry is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). Absent unfairness or prejudice, remand is not required. *Id.* (citing *Phelan v. Bowen*, 846 F.2d 478, 481 (8th Cir. 1988)).

The ALJ must also determine a claimant's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (alteration in original) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

### 3.    *Analysis*

The record does not support Claimant's arguments that the ALJ's determination at step three of the sequential evaluation process is flawed. The record also does not support Claimant's assertion that the ALJ failed to fully and fairly develop the record in determining Claimant's RFC as it relates to her migraine impairment.

First, Claimant does not acknowledge the Eighth Circuit's longstanding precedent that an ALJ need not explain the reasons an impairment does not equal a listed impairment as long as the ALJ's overall conclusion is supported by the record. *Boettcher*, 652 F.3d

at 863; *see also Vance*, 860 F.3d at 1118; *Pepper ex rel. Gardner*, 342 F.3d at 855. Further, Claimant's reliance on *Hesseltine* and *Mann* for the proposition that an ALJ must, at step three, specifically address Claimant's migraines for medical equivalence to listing 11.02 is misplaced. In *Hall v. Saul*, No. 18-CV-2032-LTS-KEM, 2019 WL 5085427 (N.D. Iowa Oct. 10, 2019), Chief Judge Strand addressed *Hesseltine* and *Mann* with regard to addressing medical equivalence at step three of the sequential evaluation process:

> In *Hesseltine*, the error was not just that the ALJ provided a simple conclusion without analysis when addressing a listing at step three. Instead, the ALJ failed to sufficiently discuss how the combined effect of the claimant's impairments were not equivalent to the relevant listing anywhere in the decision. *Hesseltine*, 800 F.3d at 466. It was this complete lack of analysis that caused the court to hold that it could not say "whether there was sufficient evidence to support the ALJ's decision" without further explanation. *Id*. Similarly, the error in *Mann* was not just that the ALJ failed to expressly address whether the claimant's migraines medically equaled Listing 11.03. In addition to this omission, [the court] found sufficient evidence in the record to suggest that the claimant's migraines could be equivalent to the listing. *Mann*, 100 F.Supp.3d at 720-21. Because the ALJ's decision lacked sufficient analysis to explain why Mann's migraines could not medically equal Listing 11.03 and the record contained sufficient evidence that they could, [the court] was unable to find that the ALJ's decision was supported by substantial evidence. *Id*.

*Hall*, 2019 WL 5085427 at *6 (emphasis in original).[3]

After noting that SSR 17-2P provides that "[g]enerally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes

---

[3] *Phillip*, which Claimant also relies on, is like *Hesseltine* and *Mann*, as the court in that case found that the ALJ "failed to support his finding that [the claimant] did not meet or medically equal the severity of a listed impairment, and because the record contains inconsistencies on this issue, [the court] is unable to determine whether substantial evidence supports the ALJ's finding that [the claimant's] impairments did not meet or medically equal [the] listing[.]" 2020 WL 4001162, at *24.

sufficient articulation for this finding" because "articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3," 2017 WL 3928306, at *4, Chief Judge Strand explained that:

> The errors identified in *Hesseltine* and *Mann* are easy to identify when considered in light of SSR 17-2P. By not articulating reasoning that could support the conclusion that the claimant's impairments failed to meet or medically equal a relevant listing at any point in the decision, the ALJ in *Hesseltine* did not articulate "the reason(s) why the individual [was] or [was] not disabled at a later step" in a way that was "sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step [three]." *See* SSR 17-2P. By finding sufficient evidence that the claimant's migraines could medically equal a listed impairment in *Mann*, [the court] essentially held that the ALJ incorrectly believed "the record d[id] not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment," and the subsequent lack of analysis rendered [the court] incapable of finding substantial evidence that Mann's impairment was not equivalent to the listing. *See* SSR 17-2P.

*Hall*, 2019 WL 508527, at *3-*4 (first, second, third, and fifth alteration in original). Further, *Hall* explains that a claimant suffering from migraines does not automatically necessitate that, at step three, the ALJ specifically address the issue of medical equivalence for migraines. Instead, in reviewing an ALJ's decision, where the ALJ has not made a specific finding at step three as to medical equivalence, the reviewing court must consider: (1) "the extent to which the evidence in the record as a whole suggests that [a claimant's] unlisted impairments could medically equal a listing and whether the ALJ's analysis sufficiently resolves any inconsistency between the conclusions and the record"; and (2) "the extent to which the ALJ articulated reasoning at subsequent steps that can sufficiently explain the ALJ's step-three conclusions." *Id*. at *8.

With these principles in mind, I will consider whether the ALJ erred by not specifically articulating his reasons for not finding Claimant's migraine impairment medically equivalent to listing 11.02. The ALJ found that Claimant's "[n]eurological findings, despite routine treatment for migraines, were normal (even when she endorsed delays in receiving Botox injections)." (AR at 17.) The ALJ thoroughly reviewed Claimant's treatment history for migraines, noting that Claimant's neurological findings were consistently normal and consistently successfully treated with Botox injections. (AR at 17-20, 428-29 (also noting no concerns and Botox injections working as treatment), 435, 439-41 (also noting that Botox injections have been helpful but wear off after eight weeks), 451, 460-61, 556-57, 660-61, 678, 680 (also noting complaints of daily migraines after Botox injections wore off and receiving new Botox injections), 694 (also noting daily migraines after Botox injections wore off and receiving new Botox injections)); *see also Hensley v. Colvin*, 829 F.3d 926, 933-34 (8th Cir. 2016) ("If an impairment can be controlled by treatment . . . it cannot be considered disabling") (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

The ALJ also found the opinions of the State agency medical consultants persuasive. (AR at 20.) Dr. Jan Hunter, D.O., found that, while Claimant receives Botox injections to treat her migraines, the migraines "do not rise to listing level severity or frequency." (*Id*. at 118); *see also id*. at 127-32 (finding on reconsideration that the initial assessment was consistent with the medical record and was persuasive).

Additionally, the ALJ addressed the opinions of Claimant's primary care provider, Jeffrey Guse, ARNP, and found his opinions unpersuasive. Specifically, the ALJ found that the limitations opined by Guse, including those related to Claimant's migraine impairment, were "inconsistent with and unsupported by the record of care detailing treatments and responses to treatments," specifying routine care for migraines involving Botox injections that offered relief for months at a time. (*Id*. at 21.) The ALJ also noted

that Claimant's neurological examinations were normal. (*Id.*) Finally, the ALJ found that, "[c]oncerning the time off task/marked limitation in concentration and absences more than three times per month related to migraines and pain, those limitations are not supported by the efficacy of migraine treatments, lack of acute care for chronic pain or migraines, and her normal neurological . . . examinations." (*Id.*)

Having reviewed the entire record, I find that the ALJ properly determined, at step three, that Claimant's migraine impairment did not meet or equal a listing. While Claimant consistently complained of migraines, particularly when she did not seek treatment or when treatments wore off, the record as a whole supports the ALJ's explanation that Claimant's migraines did not meet or equal listing level severity based on the efficacy of her migraine treatments, lack of acute care for her migraines, and normal neurological examinations. Even though the ALJ did not primarily make these findings at step three of the sequential evaluation process, the ALJ properly articulated his reasoning at later steps of the process to support his step three findings. *See Hall*, 2019 WL 508527, at *8. Thus, I find that the ALJ's overall conclusion is supported by substantial evidence on the record as a whole. *See Boettcher*, 652 F.3d at 863.

Moreover, Claimant fails to address the fact that Claimant does not meet listing 11.02(D), the only paragraph under listing 11.02 that Claimant cites. (Doc. 18 at 4.) While Claimant cites listing 11.02(D), Claimant makes no argument that she actually meets this listing. Paragraph D requires migraines "occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment, as well as a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentration, persistence, or pace; or adapting and managing oneself." 40 C.F.R. Pt. 404 Subpt. P, App. 1. The ALJ did not find a marked limitation in any of the functional areas. (AR at 14-15.) Therefore, even if the ALJ had erred—which he did not—such error would be harmless. *See Lucus*

*v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) ("An error is harmless when the claimant fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'") (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)).

To the extent that Claimant argues that the ALJ failed to fully and fairly develop the record with regard to her migraine impairment, I find the Claimant's argument lacks merit. Claimant asserts, without argument or explanation, that the ALJ's decision not to subpoena a report from Dr. Hines, a treating neurologist, constitutes a failure to fully and fairly develop the record. (Doc. 18 at 7.) Even though Dr. Hines's report is not in the record, the record does contain Dr. Hines's treatment notes, which the ALJ relied on in considering Claimant's migraine impairment. (AR at 17-20.) Also, while Claimant did request that the ALJ subpoena the report from Dr. Hines (*id.* at 71-72, 334-35), the ALJ declined to issue the subpoena, explaining that "[t]here is no indication Dr. Hines'[s] notes were not a sufficient source in assessing the [C]laimant's functional abilities." (*Id.* at 11.) Claimant makes no argument that she was prejudiced, and I find no prejudice, in the ALJ's decision not to subpoena the report from Dr. Hines and to rely on Dr. Hines's treatment notes in determining Claimant's RFC.

Further, with regard to the "later-acquired" report containing opinions on Claimant's migraine impairment from Dr. Shah, Claimant offers no argument or explanation for why Dr. Shah's report was not provided to the ALJ at the hearing. In fact, after discussing Claimant's request to subpoena records from Dr. Hines, the ALJ asked Claimant's attorney, Mr. Field, whether there was any other new evidence, and Mr. Field replied, "No, there's no other evidence." (*Id.* at 72.) Claimant also does not address the fact that Claimant provided Dr. Shah's report to the Appeals Council, but the Appeals Council found that the report did "not show a reasonable probability that it would change the outcome of the decision." (*Id.* at 2.) Like Dr. Hines, while the record does not contain Dr. Shah's report, the record does contain Dr. Shah's treatment notes, which

17

the ALJ also relied on when considering Claimant's migraine impairment. Also, like with Dr. Hines, Claimant makes no argument that she was prejudiced, and I find no prejudice, in the ALJ not obtaining Dr. Shah's report.

Thus, based on all of the foregoing, I find that the ALJ fully and fairly developed the record with regard to Claimant's migraine impairment. Indeed, an ALJ may issue a decision "without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Kamann*, 721 F.3d at 950 (quoting *Naber,* 22 F.3d 186, 189 (8th Cir. 1994). I find that there is ample evidence in the record which provides a sufficient basis for the ALJ's decision that Claimant's migraine impairment does not meet or equal listing 11.02. The ALJ's failure to obtain the reports from Dr. Hines and Dr. Shah does not necessitate remand. *See McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) ("While an ALJ does have a duty to develop the record, this duty is not never-ending.").

To the extent that Claimant argues that the ALJ's RFC is flawed with regard to her migraine impairment, I find the Claimant's argument lacks merit. In determining Claimant's RFC overall, including Claimant's migraine impairment, the ALJ addressed and considered Claimant's medical history and treatment for her complaints. (AR at 17-20.) In his decision, the ALJ stated that Claimant "is reasonably limited to light work with additional postural, reaching, manipulative, and environmental limitations to minimize the symptoms of and triggers for migraines, degenerative disc disease, and bilateral should repair. Given her stability of symptoms and responses to conservative treatment, greater restrictions are not warranted." (*Id*. at 21.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability, including her migraine impairment, in determining Claimant's RFC, and, in making his overall disability determination. (*Id*. at 16-20.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of her limitations in making the ALJ's RFC assessment for Claimant, including consideration of Claimant's migraine impairment. *See Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803. Accordingly, I find that Claimant's assertion that the ALJ's RFC assessment is flawed is without merit.

Based on all of the foregoing, I recommend the District Court affirm this part of the ALJ's decision.

**B.** ***Whether the ALJ Fully and Fairly Developed the Record Regarding Claimant's Neck and Shoulder-Related Functional Limitations***

**1.** ***Parties' Arguments***

Claimant argues that the ALJ failed to fully and fairly develop the record regarding her neck and shoulder-related lifting limitations and her overhead reaching limitations. (Doc. 18 at 11.) Claimant maintains that such failure is not harmless, as the ALJ's RFC determination is not supported by sufficient medical evidence concerning Claimant's lifting and overhead reaching limitations. (*Id.*) Specifically, Claimant asserts that "[t]he opinions of the agency medical consultants did not constitute substantial medical evidence to deny [her] claim" and the ALJ "should have further developed the record concerning [Claimant's] lifting and overhead reaching limitations by obtaining opinions from a treating or examining physician concerning [her] overhead reaching limitations." (*Id.* at 10) (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Further, Claimant argues that, "[o]n the record, which is missing the records of the treating shoulder surgeon that performed a left should surgery during the relevant period, the ALJ had to

better explain why he found [Claimant] had the ability to perform occasional . . .
overhead reaching[.]" (*Id.* at 11.)

The Commissioner argues that "[s]ubstantial evidence supports the ALJ's RFC
finding that [Claimant] could lift no more than 20 pounds occasionally and 10 pounds
frequently and only reach overhead occasionally." (Doc. 19 at 10.) The Commissioner
maintains that Claimant failed to prove additional limitations due to her neck and shoulder
impairments. (*Id.*) The Commissioner asserts that the ALJ had "sufficient evidence to
make an informed decision regarding [Claimant's] neck and shoulder limitations." (*Id.*)
The Commissioner points out that, in making his RFC determination, the ALJ properly
relied on Claimant's treatment records, daily activities, and the State agency medical
experts' findings. (*Id.* at 13.) The Commissioner concludes that substantial evidence
supports the ALJ's decision on this issue, and, therefore, further development of the
record is unnecessary. (*Id.*)

### 2.     Relevant Law

The ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495
F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ]
has or has not adequately developed the record; rather, such an assessment is made on a
case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008). The ALJ
bears this responsibility "independent of the claimant's burden to press [her] case" and
it extends to cases where claimants are represented by counsel at the administrative
hearing. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). However, the Eighth
Circuit has held:

> Ultimately, the claimant bears the burden of proving disability and
> providing medical evidence as to the existence and severity of an
> impairment. *Snead,* 360 F.3d at 836; 20 C.F.R. § 404.1512. Past this
> point, "an ALJ is permitted to issue a decision without obtaining additional
> medical evidence so long as other evidence in the record provides a

20

sufficient basis for the ALJ's decision." *Naber v. Shalala,* 22 F.3d 186, 189 (8th Cir. 1994).

*Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). The inquiry is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). Absent unfairness or prejudice, remand is not required. *Id.* (citing *Phelan v. Bowen*, 846 F.2d 478, 481 (8th Cir. 1988)).

The ALJ also determines a claimant's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (alteration in original) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

### 3. Analysis

The record does not support Claimant's arguments that the ALJ failed to fully and fairly develop the record and that the ALJ's RFC determination is flawed regarding Claimant's neck and shoulder-related lifting limitations and her overhead reaching limitations.

First, there is sufficient evidence in the record to support the ALJ's lifting and overhead reaching limitations for Claimant. Overall, the ALJ found that Claimant "routinely had normal gait, range of motion, strength, sensation, and reflexes." (AR at 17.) The ALJ found that Claimant's "shoulder repair appeared to leave her range of motion intact" and "did not require ongoing care." (*Id.*) The ALJ also noted that

Claimant "did not require ongoing care nor did she consistently complain of pain in her shoulders." (*Id.*)

In support of these findings, the ALJ addressed Claimant's medical history and treatment of her shoulder impairment. (*Id.* at 17-20.) Specifically, the ALJ noted that, prior to her onset date, Claimant underwent shoulder surgery and participated in physical therapy and injections for her shoulders. (*Id.* at 17.) In April 2017, Claimant complained of shoulder pain to her primary care physician but indicated that she was "following with orthopedic surgery for management" and that "there is nothing further they're going to do at this time." (*Id.* at 17, 631.) In May 2017, upon examination her primary care physician found no joint swelling or effusion, full range of motion in all extremities, and no pain. (*Id.* at 17, 627.) Also, in May 2017, she received joint corticosteroid injections in both shoulders. (*Id.* at 17, 393.) The ALJ noted that Claimant progressed through physical therapy in April 2018 following left shoulder surgery in March 2018. (*Id.* at 18, 504-14.) In July 2018, Claimant had her annual physical, where her primary care physician found Claimant's extremities to be normal and atraumatic. (*Id.* at 18, 577.) The ALJ noted that, in September 2018, when Claimant was seen for perimenopausal symptoms, she denied any other symptoms and made no complaints regarding her shoulders. (*Id.* at 18-19, 594-95.) In May 2019, imagining of her cervical spine showed minimal anterolisthesis of C3 on C4 and mild retrolisthesis, imagining of her thoracic spine showed mild dextroscoliosis, and imagining of her lumbar spine showed no issues. (*Id.* at 19, 700-704.) Also in May 2019, the ALJ noted that an examination by her primary care physician showed no issues related to her back, neck, or extremities. (*Id.* at 19, 731.) In September 2019, at her annual physical, Claimant had normal range of motion in her neck and musculoskeletal system and no noted issues with gait, strength, or reflexes. (*Id.* at 19-20, 741-48.) Claimant returned to her primary care physician in November 2019 complaining of chronic pain, but upon examination she had normal range

of motion in her neck and musculoskeletal system and no noted issues with her upper extremities. (*Id.* at 20, 761-63.)

Second, the opinions of the State agency medical consultants support the ALJ's RFC assessment and is consistent with Dr. Hunter's and Dr. Byrnes's RFC assessments. (*Id.* at 20, 116-17, 130-31.) In particular, like the ALJ's determination, both Dr. Hunter and Dr. Byrnes limited Claimant to occasionally overhead reaching with both upper extremities due to her history of bilateral shoulder pain. (*Id.* at 117, 131.) Contrary to Claimant's implied argument that the ALJ relied only on the State agency medical consultants in determining her RFC, in addition to the opinions of the State agency medical consultants, the ALJ also relied on other medical evidence in the record, including the treatment notes of various treating sources discussed above. *See Casey*, 503 F.3d at 694 (finding the ALJ did not err in considering a State agency opinion along with the medical evidence as a whole); *see also Hensley*, 829 F.3d at 932 (finding that while a claimant's RFC must be supported by some medical evidence, "there is no requirement that an RFC finding be supported by a specific medical opinion").

Third, to the extent that Claimant is arguing that the ALJ should have obtained missing records relating to Claimant's left should surgery during the relevant period, I find that this argument lacks merit. Claimant does not specifically identify any records that ALJ should have obtained from the Arizona surgeon who performed surgery on Claimant's left shoulder. Furthermore, there is no indication in the record that Claimant attempted to obtain these records before or after the hearing. Moreover, at the hearing, when Claimant's attorney was asked whether there was any other new evidence for the record, Mr. Field replied, "No, there's no other evidence." (AR at 72.) Additionally, Claimant makes no argument that she was prejudiced, and I find no prejudice, in the ALJ not obtaining these records from Arizona.

Based on all of the foregoing, I find that the ALJ fully and fairly developed the record with regard to Claimant's neck and shoulder impairment. Indeed, an ALJ may issue a decision "without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Kamann*, 721 F.3d at 950 (quoting *Naber,* 22 F.3d 186, 189 (8th Cir. 1994). I find that there is ample evidence in the record which provides a sufficient basis for the ALJ's decision regarding Claimant's neck and shoulder-related lifting limitations and her overhead reaching limitations. The ALJ's failure to obtain records from Arizona does not necessitate remand. *See McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) ("While an ALJ does have a duty to develop the record, this duty is not never-ending.").

To the extent that Claimant argues that the ALJ's RFC is flawed with regard to her neck and shoulder impairment, I find the Claimant's argument lacks merit. In determining Claimant's RFC overall, including Claimant's neck and shoulder impairment, the ALJ addressed and considered Claimant's medical history and treatment for her complaints. (AR at 17-20.) In his decision, the ALJ stated that Claimant "is reasonably limited to light work with additional postural, reaching, manipulative, and environmental limitations to minimize the symptoms of and triggers for migraines, degenerative disc disease, and bilateral should repair. Given her stability of symptoms and responses to conservative treatment, greater restrictions are not warranted." (*Id*. at 21.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability, including her migraine impairment, in determining Claimant's RFC, and, in making his overall disability determination. (*Id*. at 16-20.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of her limitations in making the ALJ's RFC assessment for Claimant, including consideration of Claimant's neck and shoulder impairment. *See*

24

*Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803. Accordingly, I find that Claimant's assertion that the ALJ's RFC assessment is flawed is without merit.

Thus, based on all of the foregoing, I recommend the District Court affirm this part of the ALJ's decision.

## C.    *Whether the ALJ Properly Evaluated Claimant's Subjective Allegations*

### 1.    *Parties' Arguments*

Claimant argues that the ALJ failed to provide good reasons for discrediting her testimony and did not properly discuss the *Polaski* factors. (Doc. 18 at 12-13.) Claimant also argues that the ALJ's evaluation of her subjective allegations of disability was not supported by the record as a whole. (*Id.* at 13.) The Commissioner argues that the ALJ properly evaluated Claimant's subjective allegations of disability and his credibility findings should be affirmed. (Doc. 19 at 13-15.)

### 2.    *Relevant Law*

When assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). In *Polaski*, the Eighth Circuit stated that:

> The [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors;

(4) dosage, effectiveness, and side effects of medication; [and]
(5) functional restrictions.

739 F.2d at 1322. An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

### 3. Analysis

The record does not support Claimant's argument that the ALJ failed to provide good reasons for discounting Claimant's subjective complaints. The ALJ articulated his reasons for discounting Claimant's allegations at length considering the hearing testimony, Claimant's medical records, and doctors' medical opinions. (AR at 16-20.)

The ALJ found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [C]laimant's

statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 16.)  Specifically, the ALJ found that:

> As for the [C]laimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because upon examination, the [C]laimant was routinely alert and oriented and in no distress.  She routinely had normal gait, range of motion, strength, sensation, and reflexes.  Neurological findings, despite routine treatment for migraines, were normal (even when she endorsed delays in receiving Botox injections).  Her shoulder repair appeared to leave her range of motion intact and as outlined [in the decision], she did not require ongoing care nor did she consistently complain of pain in her shoulders.

(*Id.* at 17.)  Further, the ALJ thoroughly considered the intensity and severity of Claimant's symptoms in his discussion of Claimant's RFC.  (*Id.* at 17-20.)  In doing so the ALJ addressed the relevant *Polaski* factors and considered: (1) the Claimant's daily activities (*Id.* at 20); (2) the duration, frequency, and intensity of the condition (*id.* at 17-20); (3) the use of medication (*id.* at 17-19); (4) precipitating and aggravating factors (*id.* at 17-20); and (5) functional restrictions (*id.*).  *See Wildman*, 596 F.3d at 968.

The ALJ also considered Claimant's daily activities.  The ALJ found that:

> The [C]laimant lives in her home with family.  She can feed the dogs and let them out.  She has no significant issues with personal care tasks, but does allege some difficulty with neck use.  While she alleges these limitations based on neck pain, review of the record does not demonstrate any significant deficits with her neck throughout the longitudinal record of care.  The [C]laimant can still prepare meals, but asserts an altered diet.  She can complete household chores, do laundry (although she cannot carry baskets) and she cannot vacuum.  She can go out alone, ride in a car, drive a car, and frequently goes outside for fresh air.  The record also discloses travel to and from Phoenix[,] Arizona throughout the record of care.  She can also shop in stores once a week and her ability to manage her finances is unchanged and unaffected.  Secondary to symptoms, she still watches television, plays sports, ride[s] motorcycles, and travel[s].  She can also attend church on a monthly basis.

(*Id.* at 20.)

In sum, I find that the ALJ appropriately discounted Claimant's subjective allegations of disability because the ALJ found inconsistencies in the evidence as a whole and considered the *Polaski* factors. *See Wildman*, 596 F.3d at 968-69. As such, I find the ALJ did not err in discounting Claimant's testimony or her allegations because substantial evidence as a whole supported the ALJ's credibility determination. It is not for this Court to reweigh evidence. Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801. Thus, I recommend the District Court affirm this part of the ALJ's decision.

## IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 24th day of August, 2022.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa