# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| HEATHER M., <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | No. C20-2086-LTS <br><br> **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This case is before me on a Report & Recommendation (R&R) by United States Magistrate Judge Mark A. Roberts. Doc. 24. Judge Roberts recommends I affirm the decision of the Commissioner of Social Security (the Commissioner) denying the application by plaintiff Heather M. (the Claimant) for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.[1] The Claimant filed timely objections (Doc. 25), and the Commissioner filed a response (Doc. 26).

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept

---

[1] In accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, I will refer to a Social Security claimant by the claimant's first name and last initial due to significant privacy concerns.

as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely

2

because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B. *Review of Report and Recommendation*

A district judge reviews a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude

3

> further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

The Claimant filed an application for DIB on May 21, 2018, alleging a disability onset date of January 15, 2017. She suffers from chronic daily migraines, degenerative disc disease and gastroparesis. After her claim was denied initially and on reconsideration, the Claimant requested a hearing with an Administrative Law Judge (ALJ). The ALJ held a hearing on December 4, 2019, and issued a decision on December 23, 2019, finding the Claimant was not disabled. The Appeals Council denied review on August 17, 2020. The Claimant then filed her complaint in this court on October 16, 2020.

Judge Roberts first analyzed whether the ALJ properly considered if the Claimant's medical conditions equaled listing 11.02. He noted the Claimant's failure to acknowledge the "Eighth Circuit's longstanding precedent that an ALJ need not explain the reasons an impairment does not equal a listed impairment as long as the ALJ's overall conclusion is supported by the record." Doc. 24 at 12 (citing *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011)). He explained that while the ALJ did not make specific findings at step three, the ALJ properly articulated his reasoning at later steps of the process. *Id.* at 15-16. For instance, the ALJ "thoroughly reviewed" the Claimant's treatment history for migraines and relied on opinions by state agency medical consultants. *Id.* at 15. The consultants found that while the Claimant received Botox injections to treat her migraines, the migraines did not have the severity or frequency required to meet listing level. *Id.* Judge Roberts also pointed out that the ALJ found the Claimant's primary care provider's opinion unpersuasive because his opinions as to the Claimant's limitations were inconsistent with the record detailing the Claimant's response to treatment. *Id.* Judge Roberts noted that while the record demonstrates that the

4

Claimant consistently complained of migraines, there is substantial evidence to support "the ALJ's explanation that Claimant's migraines did not meet or equal listing level severity based on the efficacy of her migraine treatments, lack of acute care for her migraines, and normal neurological examinations." *Id.* at 16. Ultimately, Judge Roberts concluded the ALJ properly determined the Claimant's migraine impairment did not meet or equal a listing.

Judge Roberts also addressed whether the ALJ fully and fairly developed the record with regard to her migraine impairment. Doc. 24 at 17. He noted that while ALJ declined to subpoena a report from Dr. Hines, a treating neurologist, the record does include his treatment notes, which the ALJ relied on. *Id.* Further, there is no evidence the notes were inadequate to detail the Claimant's condition. *Id.* Judge Roberts noted that for similar reasons, the ALJ's decision not to obtain Dr. Shah's report is insufficient to demonstrate the ALJ failed to develop the record fully and fairly. *Id.* Like Dr. Hines, Dr. Shah's notes were a part of the record the ALJ relied on. *Id.* at 17-18. Judge Roberts concluded that because the ALJ considered the medical evidence as a whole, which included notes from both Dr. Hines and Dr. Shah, the ALJ properly developed a full and fair record. *Id.* at 19.

Next, Judge Roberts addressed whether the ALJ fully and fairly developed the record with regard to the Claimant's neck and shoulder limitations. He noted the ALJ considered the Claimant's medical and treatment history for her shoulder. *Id.* at 22-23. Further, he found the state agency medical consultants' opinions were consistent with the RFC assessments, as they limit the Claimant to occasional overhead reaching based on her shoulder pain. *Id.* at 23. Judge Roberts rejected the Claimant's arguments that the ALJ relied only on the state agency medical consultants' opinions, as the ALJ also relied on other medical evidence in the record, including treatment notes from the Claimant's physicians. *Id.* Finally, Judge Roberts found that the Claimant's argument that the ALJ should have obtained missing records related to her left shoulder surgery lacked merit, as the Claimant did not specify what kind of records the ALJ should have obtained, nor

5

did the Claimant attempt to obtain these records before or after the hearing. *Id.* Judge Roberts concluded that "the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of her limitations in making the ALJ's RFC assessment for Claimant, including consideration of Claimant's neck and shoulder impairment." *Id.* at 24. He further found the ALJ's decision was based on a fully and fairly developed record that the ALJ made a proper RFC determination with regard to the Claimant's shoulder and neck-related functional limitations. *Id.* at 25.

Next, Judge Roberts assessed whether the ALJ properly evaluated the claimant's subjective allegations. *Id.* Judge Roberts considered the ALJ's reasoning for discounting the Claimant's allegations, which included that the Claimant's statements were not consistent with the evidence in the record. *Id.* at 26-27. Judge Roberts quoted the ALJ's decision as follows:

> As for the [C]laimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because upon examination, the [C]laimant was routinely alert and oriented and in no distress. She routinely had normal gait, range of motion, strength, sensation, and reflexes. Neurological findings, despite routine treatment for migraines, were normal (even when she endorsed delays in receiving Botox injections). Her shoulder repair appeared to leave her range of motion intact and as outlined [in the decision], she did not require ongoing care nor did she consistently complain of pain in her shoulders.

*Id.* at 26-27 (quoting AR at 17). Judge Roberts also observed that the ALJ addressed the relevant *Polaski* factors, as well as the Claimant's daily activities. Doc. 24 at 27. Regarding daily activities, the ALJ noted:

> The [C]laimant lives in her home with family. She can feed the dogs and let them out. She has no significant issues with personal care tasks, but does allege some difficulty with neck use. While she alleges these limitations based on neck pain, review of the record does not demonstrate any significant deficits with her neck throughout the longitudinal record of care. The [C]laimant can still prepare meals, but asserts an altered diet. She can complete household chores, do laundry (although she cannot carry baskets) and she cannot vacuum. She can go out alone, ride in a car, drive

6

a car, and frequently goes outside for fresh air. The record also discloses travel to and from Phoenix[,] Arizona throughout the record of care. She can also shop in stores once a week and her ability to manage her finances is unchanged and unaffected. Secondary to symptoms, she still watches television, plays sports, ride[s] motorcycles, and travel[s]. She can also attend church on a monthly basis.

Doc. 24 at 27 (citing AR at 20). Judge Roberts concluded the ALJ did not err in discounting the Claimant's testimony because substantial evidence supported his credibility determination. Doc 24 at 28.

For all of these reasons, Judge Roberts found that substantial evidence supports the Commissioner's denial of benefits and therefore recommends that I affirm the Commissioner's decision.

## IV. DISCUSSION

The Claimant makes the following objections to the R&R:

- The ALJ did not fully and fairly develop the record concerning whether the Claimant's conditions medically equaled listing 11.02 and concerning her migraine-related functional limitation,
- the ALJ did not fully and fairly develop the record concerning the Claimant's neck and shoulder-related limitations,
- the ALJ did not provide good reasons for finding the Claimant was not credibly reporting her limitations and
- the ALJ that decided the Claimant's case lacked the authority to do so.[2]

Doc. 25.

### A. *Listing 11.02 and Migraine-Related Functional Limitations*

The obligation to obtain additional medical evidence comes from the ALJ's duty to develop the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) ("Well-

---

[2] As the Claimant notes, her argument as to the ALJ's authority was not addressed in the R&R, as Judge Roberts declined to permit the Claimant to file supplemental briefing to add an argument that she failed to include in her prior briefing. *See* Doc. 23.

7

settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010). "Although that duty may include re-contacting a treating physician for clarification of an opinion, that duty arises only if a crucial issue is undeveloped." *Id.* An undeveloped statement may include "the report from a medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (internal quotations omitted). If the record does not contain all the information needed to determine whether a claimant is disabled, an ALJ may take various steps, such as ordering additional exams or requesting additional evidence, to make the decision. 20 C.F.R. § 404.1520b(b)(2). However, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994). Ultimately, the question is whether the Claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record; absent unfairness or prejudice, we will not remand." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

The Claimant argues Judge Roberts incorrectly treated this case as a *Hall* case, instead of a *Mann* or *Phillip* case.[3] Doc. 25 at 2. She argues, "[a]n ALJ on remand should review . . . how Ms. Mulcahy's headaches and migraines impact her ability to work, following *Mann* and similar cases." *Id.* at 3. The Claimant states "the record

---

[3] *See Hall v. Saul*, No. 18-CV-2032, 2019 WL 5085427 (N.D. Iowa Oct. 10, 2019); *Mann v. Colvin*, 100 F. Supp. 3d 710 (N.D. Iowa April 23, 2015); *Phillip v. Saul*, No. 19CV422, 2020 WL 4001162 (Neb. July 15, 2020).

8

shows headaches and migraines at a frequency and a severity sufficient to require a *Mann*/*Phillip*-like full and fair development of the [Listing] 11.02 medical equivalence issue," which the ALJ did not do at step three of the process. *Id*.

In *Hall*, I held that the ALJ had not erred by failing to address Listing 11.02 at step three of the analysis, as the ALJ explained at a later step why the claimant's condition did not equal a listing. *Hall*, at *10. By contrast, in *Mann* I recommended remand for further development of the record as to the effect of the claimant's migraine headaches on her ability to function in the workplace, and as to whether the claimant's migraines met or equaled listing 11.03, because the ALJ had not considered that listing at all. *Mann*, 100 F. Supp. 3d at 722-23. Instead, the ALJ had suggested that was the claimant's responsibility to identify specific listings for the ALJ to consider. *Id*. Similarly, in *Phillip* the district court reversed the Commissioner's decision and remanded the case to determine whether the claimant's headache impairment equaled listing 11.02.

As Judge Roberts noted, the Claimant simply fails to acknowledge that under Eighth Circuit precedent, an ALJ does not err by failing to address a specific listing at step three of the analysis if the ALJ explains at a later step why the claimant's condition did not meet a listing. Doc 24 at 12-13 (citing *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011)). Here, the ALJ articulated his reasoning to support his step three findings at later steps of the process, including that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 16. The fact that the ALJ did not address listing 11.02 at step three does not warrant a remand because, unlike the ALJ in *Mann*, the ALJ explained why the Claimant's condition did not equal listing 11.02 at a later step.

The Claimant makes two other arguments to support her contention that the ALJ did not fully and fairly develop the record with regard to whether her medical conditions equaled listing 11.02. First, she argues the ALJ erred by denying a request to subpoena a report from Dr. Hines, a treating neurologist. Doc. 25 at 3-5. Secondly, she argues

9

that because the ALJ declined to subpoena Dr. Hines' report,[4] the Claimant did not have the opportunity to submit Dr. Shah's opinion before the ALJ rendered a decision. Doc. 25 at 3. The ALJ thus issued a decision without a treating neurologist's opinion, which the Claimant argues amounts to error. *Id.* at 3-7. The Claimant argues that "the ALJ's actions that prevented the consideration of Dr. Shah's opinions pre-decision should also warrant remand for full and fair [development] of the record at Steps 3 and beyond of the sequential evaluation process." *Id.* at 7.

There are several issues with this argument. First, Dr. Hines treated the Claimant on three occasions between January 15, 2019, and May 21, 2019. AR 680-705. The ALJ considered treatment notes from these visits and there is no evidence Dr. Hines' treatment notes did not suffice. To the extent Dr. Hines' opinion may have contradicted his notes, "[i]t permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 834 (8th Cir. 2009).

---

[4] The Claimant argues she was entitled to a decision on the subpoena request at the hearing, and because she did not receive a ruling until later, this amounts to reversible error. *See* Doc. 25. This argument is dubious, at best. The ALJ denied the subpoena in his final, written DIB decision, stating "The undersigned denied this request. There is no indication Dr. Hines' notes were not a sufficient source in assessing the claimant's functional abilities**."** AR 11. According to the Social Security Administration's Hearings, Appeals and Litigation Law Manual (HALLEX) I-2-5-78(D):

> If an ALJ denies a claimant's request for a subpoena, the ALJ must notify the claimant of the denial, either in writing or on the record at the hearing. In either situation, the ALJ will enter the request into the record as an exhibit. If the denial is in writing, the ALJ will also enter the denial notice into the record as an exhibit. Whether on the record or in writing, the ALJ will explain why the ALJ declined to issue a subpoena.

The manual does not specify that a claimant is entitled to a decision at the hearing. Even if it did, the Claimant has provided no authority to suggest HALLEX creates a process that, if not followed, amounts to reversible error. *See Hartfield v. Barnhart*, 384 F.3d 985, 988 (8th Cir. 2004) ("The Commissioner issued a set of internal rules, the Program Operations Manual System ("POMS") to aid in determinations such as these. While these internal rules do not have legal force and do not bind the Commissioner, courts should consider them in their findings."),

Next, the ALJ was not the reason the opinions from Dr. Hines and Dr. Shah were not in the record. While the ALJ has the burden to develop the record, the Claimant has a duty to press her case. *Snead*, 360 F.3d at 838. The Claimant sought an administrative subpoena for Dr. Hines' opinion because when she approached Dr. Hines separately, he intended to charge $700 an hour to complete what the Claimant described as "a simple questionnaire form." AR 334. While expensive, the Claimant had an opportunity to obtain Dr. Hines' report. Moreover, she does not explain what prevented her from including Dr. Shah's opinion in the record at the hearing. Instead, she argues:

> Imagine the ALJ had told [the Claimant] that he was denying the subpoena request, and they had time to respond pre-decision. At that point, maybe [the Claimant's attorney] curmudgeonly advances . . . the Dr. Hines consulting fee [the Claimant's attorney] (and the ALJ) felt was exorbitant to fully develop the record. Or, perhaps more likely, maybe [the Claimant's attorney] tries to move faster with obtaining Dr. Shah opinions on this issue and lets the ALJ know he will just obtain Dr. Shah opinions on the issue. The ALJ decided the case on December 23, 2019, and Dr. Shah provided opinions on December 27, 2019. (See TR 63-66). It appears absent the ALJ's approach to this issue, the Dr. Shah opinions would have made it into the record for ALJ consideration pre-decision.

Doc. 25 at 5-7. This is all highly speculative. Moreover, the Claimant and her counsel were certainly aware that the ALJ could deny the request for a subpoena and still chose not to obtain Dr. Shah's opinion earlier. Finally, at the hearing, the Claimant stated she had no other evidence to present despite knowing the ALJ had not yet ruled on the subpoena. AR 72.

More importantly, the Claimant cannot demonstrate any sort of prejudice. First, Dr. Hines' notes were included in the record. AR 27; 680-705. In the request for an administrative subpoena, the Claimant stated, "The important facts which we believe that Dr. Hines would testify to is from his practicing in neurology to indicate the residual functional capacity of claimant." AR 334. She also stated that she was seeking "a simple questionnaire form." AR 334. The Claimant has not demonstrated this "simple questionnaire form" would have changed the outcome. In fact, the ALJ likely would

11

have been entitled to discount the form if it was indeed a "simple questionnaire form." *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022) ("Dr. Kenderian's opinion was entitled to relatively little evidentiary value on its face, because it was rendered on a check-box and fill-in-the-blank form.").[5] Further, to the extent the form would have contradicted Dr. Hines' treatment notes—which the ALJ considered—"[i]t permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 834 (8th Cir. 2009). Finally, the Claimant later provided Dr. Shah's report to the Appeals Council, which found "this evidence does not show a reasonable probability that it would change the outcome of the decision." AR 2. For all of these reasons, the Claimant cannot show prejudice based on how the ALJ developed the record.

The Claimant makes no discernible effort to argue the Claimant's migraines equal listing 11.02 based on the record before the ALJ. Regardless, I find substantial evidence supports the ALJ's decision. The Claimant's examinations were normal, she reported reprieve from her symptoms with treatment and she had not sought acute care for her migraines. Therefore, I find the ALJ fully and fairly developed the record, and sufficient evidence supports her migraine-related functional limitations.

---

[5] The 8th Circuit has repeatedly held such opinions have little evidentiary value.

> We held in *Wildman v. Astrue*, 596 F.3d 959 (8th Cir. 2010), that a medical opinion was conclusory, and therefore properly discounted, when it consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration. Similarly, an ALJ in *Thomas v. Berryhill*, 881 F.3d 672 (8th Cir. 2018), did not err in giving little weight to an assessment that consisted of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses. Such forms, we explained, provide little to no elaboration, and so they possess little evidentiary value. When a treating physician's opinion appears on such a form, an ALJ permissibly may rely more heavily on other opinions in the record.

*Swarthout*, 35 F.4th at 611 (cleaned up).

## B. The Claimant's Neck and Shoulder-Related Limitations

The ALJ found the Claimant "has the ability to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she can never climb ladders, ropes, or scaffolds; she can occasionally reach overhead with the bilateral upper extremities; she can frequently handle and finger, bilaterally." AR 16. The Claimant argues:

> The ALJ could not sufficiently evaluate the success of [the Claimant's] shoulder repair without review of the shoulder surgeon's treatment notes to fill in the gaps between the March 2018 left shoulder surgery and what sounds like a right rotator cuff tear that needed surgical intervention too, after the left shoulder healed.

Doc. 25 at 8. Alternatively, the Claimant argues the ALJ should have found a limitation preventing the Claimant from reaching overhead. *Id.*

The record before the ALJ included various medical records detailing the Claimant's shoulder pain, which the ALJ considered. For instance, the ALJ recognized she underwent a left shoulder arthroscopy in 2015 based on her continuous complaints of shoulder pain. AR 17. He further noted she underwent shoulder surgery in April 2017. AR 18. During a follow-up on her shoulder, the Claimant asserted surgery "went well" and that she did not have post-surgical pain. AR 18. In subsequent examinations in May and July 2018, she had unremarkable physical examinations. AR 18. She denied any shoulder issues in September 2018. *Id.* However, she reported back and neck pain in January 2019, although there were no noted deficits in her range of motion. AR 19. In July 2019, and again in November 2019, she did not mention any shoulder or back pain, and she did not exhibit any changes to her range of motion. AR 19. Further, the ALJ considered the Claimant's reported activities. AR 21. The ALJ discounted the opinion of Jeffrey Guse, ARNP, as he found the Claimant's physical examinations did not demonstrate any limited range of motion or deficits in her upper or lower extremity strength. AR 21.

Ultimately, I agree with Judge Roberts that there was sufficient evidence in the record for the ALJ to determine the Claimant's neck and shoulder-related limitations. It

13

is not clear how the surgeon's treatment notes from her 2018 surgery would provide any additional insight to the Claimant's current limitations. This is bolstered by the fact that the Claimant did not seek these records before or after the hearing. For the same reasons, I agree with Judge Roberts that there is substantial evidence to support the ALJ's findings related to the Claimant's overhead reaching limitation.

### C. The Claimant's Credibility

The Claimant argues the ALJ did not provide good reasons to discredit her testimony and did not properly discuss the relevant factors set out in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Doc. 18 at 12-13. Thus, she argues the ALJ's evaluation of her subjective allegations was not supported by the record. *Id.*

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). To assess a claimant's credibility, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). Under *Polaski*, the ALJ must consider:

(1) the claimant's daily activities;
(2) the duration, intensity, and frequency of pain;
(3) the precipitating and aggravating factors;
(4) the dosage, effectiveness, and side effects of medication; and
(5) any functional restrictions.

14

*Polaski*, 739 F.2d at 1322; *see also* Social Security Ruling 16-3p.[6] The ALJ need not explicitly discuss each factor, as long as the ALJ acknowledges and considers the factors before discounting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. If an ALJ discounts a claimant's subjective complaints, the ALJ must "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis*, 353 F.3d at 647). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

Based on my de novo review, I agree with Judge Roberts that the ALJ articulated sufficient reasoning to discount the Claimant's subjective allegations. The ALJ considered the Claimant's medical records and the medical opinions. AR 16-20. The ALJ also considered the Claimant's daily activities (AR 20); the duration, intensity and frequency of her pain (AR 17-20); the precipitating and aggravating factors (AR 17-20); the dosage, effectiveness and side effects of medication (AR at 17-19); and any functional restrictions (AR 17-20). Ultimately, the ALJ found the Claimant's testimony was at odds with the record, stating:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because upon examination, the claimant was routinely alert and oriented and in no distress. She routinely had normal gait, range of motion, strength, sensation, and reflexes. Neurological findings, despite routine treatment for migraines, were normal (even when she endorsed delays in receiving Botox injections). Her shoulder repair appeared to leave her range of motion intact and as outlined below, she did not require ongoing care nor did she consistently complain of pain in her shoulders.

---

[6] The Eighth Circuit has acknowledged that Social Security Ruling 16-3p eliminated use of the term "credibility" and clarified that the evaluation of subjective symptoms is not an examination of an individual's character. *See Noerper*, 964 F.3d at 745, n.3. Rather, the review of subjective assertions is "an examination for the level of consistency between subjective assertions and the balance of the record as a whole." *Id.* The Eighth Circuit notes this ruling largely changes terminology rather than the substantive analysis. *Id.* Because the parties refer to this section as the ALJ's "credibility" determination, I will do the same to avoid confusion.

AR 17. Based on my de novo review, I find that substantial evidence supports the ALJ's assessment of the Claimant's credibility.

### D. Appointments Clause Challenge/FVRA

For the reasons set forth in *Sidney M. v. Kijakazi*, No. 21-2034-LTS-KEM (N.D. Iowa Sept. 26, 2022), I find that Nancy A. Berryhill was properly serving as Acting Commissioner under the FVRA at the time of ratifying the ALJ's appointment and that Berryhill's acting service under the FVRA and the ratification of the ALJ's appointment did not violate the Appointments Clause.

### V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff's objections (Doc. 25) to the Report and Recommendation (Doc. 24) are **overruled**.

2. I **accept** the Report and Recommendation **without modification**. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Roberts' recommendation:
    a. The Commissioner's disability determination is **affirmed**; and
    b. Judgment shall enter against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 26th day of September, 2022.

_____
Leonard T. Strand, Chief Judge